THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH KATALINICH, Defendant-Appellant.

Fourth District   No. 4—86—0394

Opinion filed March 26, 1987.

Daniel D. Yuhas and Richard D. Frazier, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

Joseph Katalinich was charged with three counts of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1)) in regard to an incident which occurred on October 2, 1984. The first count was based on an alleged stabbing incident between Katalinich and Timothy

Thornhill. Amended counts II and III alleged that Katalinich knowingly struck two police officers.

On the first day of trial, Thornhill testified that he was in J.W.'s Lounge in Springfield, Illinois, on October 2, 1984, when defendant entered the bar and took a seat at the bar next to him. An argument soon developed between the two, and the argument erupted into a scuffle. Thornhill received a wound to his left side. Witnesses testified that defendant stabbed Thornhill, causing this injury.

Police Officer Robert Mullinix testified that as he was fingerprinting Katalinich, Katalinich struck him in the face. Correctional Officer Gary Burge testified that he was kicked by Katalinich.

On the second and final day of trial, the trial judge and the two attorneys agreed that six sets of verdict forms would be given, the first three in regard to the initial counts of aggravated battery, and the last three in regard to the included offenses of battery. These six sets of verdict forms were given to the jury, and the jury retired to deliberate.

The jury subsequently returned to the courtroom, and the trial court asked the foreman whether the jury had reached a verdict. The foreman answered that they had. The jury found Katalinich guilty of two counts of battery regarding the two peace officers, not guilty of aggravated battery regarding Thornhill, not guilty of battery regarding Thornhill, and made no finding as to the two counts of aggravated battery regarding the two police officers. The trial judge then removed the jury from the courtroom and, over defense counsel's objection, decided that the jury must be brought back in and instructed the jury to make a finding regarding the two counts of aggravated battery. Over defense counsel's objection, the trial judge instructed the jury:

> "Ladies and Gentlemen of the jury, the court is instructing you that you must return back to the jury room and return two more verdicts. I'm going to give you back your original jury instructions, plus four verdict forms and you must find the defendant either guilty or not guilty of aggravated battery as to Gary Burge [the first police officer], guilty or not guilty of the offense of aggravated battery as to Robert Mullinix [the second police officer]. You will have these four forms to take back in with you."

After a short recess, the jury returned with a verdict of guilty of two counts of aggravated battery regarding the two police officers.

On February 28, 1986, defendant was sentenced to one year's probation. Defendant's late notice of appeal was allowed by this court on

August 8, 1986.

The first and principal issue in this case concerns the trial court's instruction to the jury that it must return to the jury room and that it must return two additional verdict forms regarding the aggravated-battery charges that were allegedly committed against the two police officers. We believe that this procedure utilized by the trial court constituted reversible error.

Defendant was charged with three counts of aggravated battery. By agreement of both parties and the court, the jury was given an instruction and verdict forms for each of the aggravated-battery charges, and was also given an instruction and verdict forms for the included offense of battery relating to the three aggravated-battery charges.

After deliberating the jury returned to the courtroom and stated that it had reached a verdict. The jury's verdict found defendant not guilty of aggravated battery and battery regarding the alleged stabbing incident, guilty of battery regarding the two police officers, and was silent regarding the two counts alleging aggravated battery against the two police officers. The trial court then sent the jury back into the jury room. A colloquy then developed between the two attorneys and the trial judge to determine what should be done. The trial judge initially stated:

"It seems to me that they think he was guilty both of a battery to Burge and a battery to Mullinix, and if they found that, then it seems to me that they don't believe he was guilty of an aggravated battery to Burge or to Mullinix."

Subsequently, the trial judge stated:

"[I]t would seem to me that they are finding the defendant guilty of battery only as to the police officers and therefore, they must believe he's not guilty of aggravated battery to the police officers, but I think they're going to have to sign the verdict form since we gave it to them."

Despite the trial judge's initial statement that he believed the jury did not believe that defendant was guilty of the two aggravated-battery charges in question, the trial court did not inquire as to the reasons for the jury's failure to sign verdict forms for these charges, and simply ordered the jury to return to the jury room to complete the verdict forms. Subsequently, the jury returned to court, having signed the verdict forms which indicated that defendant was guilty of two counts of aggravated battery.

■ Defendant's first argument on appeal is that the jury impliedly acquitted him of the greater offenses when it remained silent

as to those charges but convicted him of the included offenses. We agree with this contention. Section 3—4(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1983, ch. 38, par. 3—4(a)) provides, in pertinent part:

"A conviction of an included offense is an acquittal of the offense charged."

The Illinois Supreme Court, in *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 466, 427 N.E.2d 1212, 1215, stated:

"It is a well-established principle of our jurisprudence that conviction of a lesser offense operates as an acquittal of a greater offense. (See, *e.g., People v. Gray* (1977), 69 Ill. 2d 44, 51; *People v. Newman* (1935), 360 Ill. 226, 232; *People v. Carrico* (1923), 310 Ill. 543, 545.)"

The Illinois Supreme Court, in *People v. Hoffer* (1985), 106 Ill. 2d 186, 198, 478 N.E.2d 335, 342, further stated that section 3—4(a) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 3—4(a)) applied "when the jury returns a guilty verdict on a lesser offense and is silent as to the charged offense." Pursuant to these authorities, and in light of the trial judge's initial interpretation of the jury's verdicts which were originally returned, we conclude that the jury's original verdicts of guilty of the two included offenses of battery operated as an implied acquittal on the two aggravated-battery charges.

The State relies principally upon *People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626. In *Wilson,* the defendant was charged with murder, felony murder (attempted burglary), and attempt (burglary). At the close of the evidence, the jury was furnished with three sets of verdict forms, a set for each of the three counts of the indictment. After deliberation, the jury returned with only one signed verdict. The trial court record did not reflect which of the three sets of verdicts the jury had signed or whether the jury had found the defendant guilty or not guilty. The court refused to accept the initial verdict, and informed the jurors that they should return a verdict of either guilty or not guilty on each of the three counts. They were sent back to the jury room and instructed to affix their signatures to the unsigned verdicts. The three signed verdicts were returned, finding the defendant guilty on all three charges. The *Wilson* court held that this procedure was not improper. The court simply relied upon *People v. Arnett* (1951), 408 Ill. 164, 96 N.E.2d 535, as authority for its decision.

In *Arnett,* the jurors returned to the courtroom after erroneously signing the instruction sheet instead of the verdict form. The trial judge asked the foreman of the jury in open court what the jury's intended verdict was. He was informed that the jury intended to con-

vict the defendant. He then directed the jury to return to the jury room to fill out the verdict forms to properly reflect its findings in the case. This procedure was approved by the supreme court.

In *People v. Davis* (1982), 105 Ill. App. 3d 549, 556-57, 433 N.E.2d 1376, 1382, this court stated:

"There are cases in which a jury was permitted to amend or alter its verdict, but none has been called to our attention in which it was permitted to redeliberate. In *People v. Wilson* [citation], the jury erroneously signed only one of three verdict forms and was sent back to correct the error. In *People v. Arnett* [citation], the jury had erroneously signed an instruction rather than a verdict form. In none of the cases in which the jury had been sent back to correct an error, *generally of a mechanical nature*, had the trial court entered judgment nor had the jury separated." (Emphasis added.)

We interpret *Wilson* and *Arnett* to stand for the proposition that before judgment is entered on a verdict and before the jury has separated, the trial court may require emendations to the verdict so that it may truly reflect the jury's finding. (*People v. Davis* (1982), 105 Ill. App. 3d 549, 433 N.E.2d 1376.) However, this principle should only be employed to correct "technical" errors, such as when the jury accidentally signs the instructions rather than the verdict forms (*People v. Arnett* (1951), 408 Ill. 164, 96 N.E.2d 535), or where the jury simply forgets to sign the proper verdict form after reaching an agreement on a particular charge. Furthermore, we do not interpret *Wilson* and *Arnett* as altering the general rule that a conviction of an included offense operates as an implied acquittal of the more serious offense. *People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335; *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 427 N.E.2d 1212; Ill. Rev. Stat. 1983, ch. 38, par. 3—4(a).

Even if section 3—4(a) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 3—4(a)) did not apply in this case, we do not believe that under these circumstances, where a jury has returned to court having signed verdict forms relating to some charges but has returned blank verdict forms for other charges, that the trial judge can assume that the jury simply forgot to sign some of the verdict forms and order the jury to return to the jury room to complete the forms. A multitude of reasons could conceivably account for the jury's silence on the aggravated-battery charges, and the trial judge should have questioned the jury regarding the reasons for the blank verdict forms before simply instructing the jury to retire and return signed verdict forms relating to the two aggravated-battery charges.

We believe that the jury's initial silence on the two aggravated-battery charges in question could have been caused by either a jury compromise, a hung jury situation, an exercise of the historic power of lenity, or an initial intent to acquit. Under either of these four possible scenarios, the trial judge's instruction to the jury to simply return to the jury room and fill in the verdict forms, without inquiring into the reasons for the jury's silence on the two aggravated-battery charges, was improper.

If the jury's verdict was the result of a jury compromise, courts are precluded from interfering with such verdicts. As the United States Supreme Court stated in *Dunn v. United States* (1932), 284 U.S. 390, 76 L. Ed. 356, 52 S. Ct. 189, "[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." 284 U.S. 390, 394, 76 L. Ed. 356, 359, 52 S. Ct. 189, 191.

If the jury was hung, the trial court's instruction that it "must return back to the jury room and return two more verdicts" was clearly error, and may have coerced one or more of the jurors to abandon their convictions and heed to the majority for the mere purpose of returning a verdict. (*People v. Pankey* (1978), 58 Ill. App. 3d 924, 928, 374 N.E.2d 1114, 1117.) The trial court, in effect, gave a deadlock instruction (more commonly known as a *Prim* instruction (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731)) after the jury had only spent a short time deliberating and the trial court had no indication that it was deadlocked. Additionally, the trial court's deadlock instruction did not meet the standard as approved by the supreme court in *Prim*, which requires the trial court to inform the jury that any juror who may be favoring an acquittal to not abandon his convictions. *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.

By leaving the two aggravated-battery verdicts blank, the jury could have been indicating that it believed the State had met its burden of proof but still did not want to convict Katalinich. This it had every right to do. (See *United States v. Carbone* (1967), 378 F.2d 420, 422, *cert. denied* (1967), 389 U.S. 914, 19 L. Ed. 2d 262, 88 S. Ct. 242; *United States v. Rosenfeld* (1932), 57 F.2d 74, 76, *cert. denied sub nom. Nachman v. United States* (1932), 286 U.S. 556, 76 L. Ed. 1290, 52 S. Ct. 642.) Hence, if the jury were exercising its historic power of lenity in leaving the verdicts blank, then the trial court's instruction that it must return and redeliberate interfered with its historic right.

If the jury's initial verdict was meant to convict defendant of the included offenses of battery and acquit him of the greater offenses of aggravated battery, the trial court's refusal of that verdict without any explanation of why could well have been interpreted by the jury that the trial judge would not accept that verdict and believed that defendant should be convicted of the greater offense. " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' [citation], and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." *Bollenbach v. United States* (1946), 326 U.S. 607, 612, 90 L. Ed. 350, 354, 66 S. Ct. 402, 405.

It is difficult for us to imagine a situation where a jury simply "forgot" to sign the verdict forms on the more serious charges if it was its original intention to convict defendant of the more serious charge. The procedure utilized by the trial court in the instant case is only proper in the limited situation where a jury has reached a decision but has failed to properly record its decision on the verdict form. (*People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626; *People v. Arnett* (1951), 408 Ill. 164, 96 N.E.2d 535; *People v. Davis* (1982), 105 Ill. App. 3d 549, 433 N.E.2d 1376.) We believe that the jury's initial verdicts impliedly acquitted defendant of the aggravated-battery charges unless it was determined that a purely "technical" error had occurred in the signing of the verdict forms, *i.e.*, the verdict forms returned to the court did not accurately reflect the jury's decision. (*People v. Davis* (1982), 105 Ill. App. 3d 549, 433 N.E.2d 1376; Ill. Rev. Stat. 1983, ch. 38, par. 3—4(a).) Since the trial judge did not question the jury regarding the reason for its silence on the two aggravated-battery charges in question, we cannot affirmatively determine that the jury simply forgot to sign the verdict forms which indicated that defendant was guilty of the two aggravated-battery offenses. Unless this determination is made, it is not proper for the trial court to simply require the jury to return to the jury room and fill in verdict forms which were originally returned to the court unsigned. Since the trial court improperly instructed the jury in this regard, we are compelled to reverse defendant's two aggravated-battery convictions and remand this cause for resentencing on the two remaining battery convictions only.

Reversed and remanded for resentencing.

LUND and KNECHT, JJ., concur.